UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA L. SLAPAK, | ) |
| Plaintiff, | ) Case No. 3:12-cv-1176 |
| v. | ) Judge Trauger |
| TIGER MANAGEMENT GROUP, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM**

Pending before the court is a Motion for Summary Judgment filed by the defendant, Tiger Management Group, LLC "(TMG") (Docket No. 21), to which the plaintiff has filed a Response in opposition (Docket No. 28), and the defendant has filed a Reply (Docket No. 40). For the reasons stated herein, the Motion for Summary Judgment will be granted.

**BACKGROUND**

**I. Overview[1]**

Defendant TMG is a Tennessee corporation that purchased 26 retail convenience stores in the Nashville area from ExxonMobil in 2010 (the "ExxonMobil Purchase"). At the time of its founding, TMG shared owners with Convenience Management Group ("CMG"), a corporation

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 23), the plaintiff's responses thereto (Docket No. 30), the plaintiff's statement of additional undisputed facts (Docket No. 29) and the defendant's responses thereto (Docket No. 43), and the exhibits filed in support of the parties' submissions (Docket No. 21, Exs. A-H; Docket No. 33, Exs. 1-6). The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

that was founded in 2004. In 2012, CMG merged into TMG. During its existence, CMG owned and operated 11 convenience stores in Tennessee and Georgia. CMG and TMG were separate companies that had different lenders. TMG was founded in 2010 for the express purpose of purchasing the ExxonMobil stores.

The plaintiff, Patricia Slapak, is a former employee of ExxonMobil and TMG. Slapak began working for ExxonMobil in 1988. In 2010, she was working as a merchandising specialist. When TMG acquired the 26 ExxonMobil stores in July 2010, the purchase agreement between ExxonMobil and TMG ("Purchase Agreement") required TMG to employ five ExxonMobil employees, including the plaintiff, for one year following completion of the sale. All of the ExxonMobil employees retained by TMG are female. Slapak asserts that ExxonMobil further informed her at the time of the Purchase Agreement that she would be guaranteed employment with TMG until December 2011, when her ExxonMobil retirement benefits would vest. Slapak accepted employment at TMG as its Director of Marketing and was employed by TMG between July 2010 and December 2, 2011.

## II. Slapak's Employment at TMG

Slapak began working at TMG on approximately July 23, 2010, the day after TMG completed the purchase from ExxonMobil. As the Director of Marketing for TMG, the plaintiff had similar duties to her role at ExxonMobil. She worked closely with TMG's owners—Lyle Finley, Greg Merriman, Mike Campbell, Arnold Tackett, and Marlin Larson.

In approximately November 2010, TMG began negotiating with ExxonMobil to purchase an additional 33 retail convenience stores in Louisiana (the "Louisiana Acquisition"). With the Louisiana Acquisition, TMG's owners intended to achieve growth and generate opportunities for all TMG employees, including the plaintiff. Specifically, TMG intended for Slapak to be in

2

charge of the marketing for its Tennessee and Louisiana stores and offered Slapak the opportunity to travel to Louisiana to help with the start-up, if the acquisition was successful.

At some point in time, Marlin Larson retired and relinquished his ownership interest in TMG. In April 2011, TMG brought in Tristan Anowar as a member of TMG. Anowar possesses equal ownership interest to the other owners. The owners named Anowar TMG's Vice President of Operations. TMG intended for Anowar to run the company's operations in the Louisiana market, assuming that the Louisiana Acquisition was successful.

Around May or June 2011, TMG learned that it was unsuccessful in its bid for the Louisiana ExxonMobil stores. Around the same time, Merriman reviewed and studied the company's financial performance in anticipation of a financial report for TMG's lender due in September 2011. Upon review of the company's performance, Merriman concluded that TMG was performing below expectations and, therefore, was at risk of defaulting on its loan agreement. The owners discussed the performance issues and determined that, since the transition period essentially was complete, the company was in a position to conduct a reduction in force ("RIF") by terminating its mid-management level employees. All three mid-management employees were former ExxonMobil employees. The owners determined that, following a RIF, the owners could assume greater responsibility for the general management and operations of the company. One owner, Campbell, testified that the decision to shift responsibilities from employees to owners improved the company's financial position in a number of ways, including by reducing salary expenditures and permitting owners to get more involved in the business. TMG's owners assigned the company's marketing duties, which had been performed by the plaintiff, to the newest owner, Anowar.

3

In July 2011, following the expiration of the one-year employee retention period set forth in the Purchase Agreement, TMG's owners informed its three mid-level managers—the plaintiff, District Manager Sara Burrows, and District Manager Freddie Brown—that their positions were being eliminated. At the same meeting, Slapak informed TMG that it was required under the Purchase Agreement to continue her employment until December 2011, so that her retirement benefits would vest. TMG submits that it was unaware of this arrangement but, nevertheless, agreed and continued to pay Slapak until December 2011. Although it continued to pay Slapak, TMG did not require Slapak to perform any work between July 2011 and December 2, 2011, when her employment was terminated. After July 2011, Slapak no longer visited the TMG office. Following Slapak's departure from the office in July 2011, Anowar assumed the plaintiff's job duties and served as the company's Vice President of Marketing.

### III. The Action

Slapak filed the Complaint against TMG on November 13, 2012, alleging that she was terminated because of her age and her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act, 29 U.S.C. § 623. (Docket No. 1.) She filed an Amended Complaint on November 28, 2012. (Docket No. 5.) The plaintiff has since conceded her age discrimination claim (Docket No. 28 at 1) but maintains that TMG terminated her in a targeted effort to eliminate females from the company.

## ANALYSIS

### I. Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. Gender Discrimination under Title VII

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). An employer is liable under Title VII when the plaintiff shows that the defendant had a discriminatory intent or motive in taking a job-related action. *Id.* (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). A plaintiff can demonstrate this intent by presenting either direct or circumstantial evidence. *Id.* Here,

5

Slapak has failed to submit any evidence of direct discrimination. Accordingly, the court will limit its analysis to any indirect evidence of gender discrimination submitted by the plaintiff.

### A. Indirect Evidence of Discrimination

Claims of gender discrimination under Title VII are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *DiCarlo v. Potter*, 358 F.3d 408, 414-15 (6th Cir. 2004); *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008). Pursuant to the *McDonnell Douglas* framework, Slapak must first produce evidence to establish a *prima facie* case of gender discrimination. To establish a *prima facie* case of gender discrimination, the plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside her protected class or was treated differently than similarly situated, non-protected employees. *DiCarlo,* 358 F.3d at 415; *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

In cases involving a RIF, such as here, the plaintiff has an added *prima facie* burden to produce additional direct, circumstantial, or statistical evidence that her status as a member of a protected class was a factor in her termination. *See Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 535 (6th Cir. 2006) (citing *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984) ("The mere termination of a competent employee when employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of [gender] discrimination.")); *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). A RIF occurs when business considerations cause an employer to eliminate one or more positions within the company. *Williams*, 161 F. App'x at 534 (citing *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 895 (6th Cir. 1997)). An employee is not terminated as a result of a RIF if she is replaced after

her discharge. *Barnes,* 896 F.2d at 1465. However, an employee "is not replaced where another employee is assigned to perform the plaintiff's duties in addition to other duties or when the work is redistributed among other existing employees already performing related work." *Id.*

Once the plaintiff meets her *prima facie* burden, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the discharge. *DiCarlo,* 358 F.3d at 414–15. A RIF constitutes a legitimate, non-discriminatory basis for terminating an employee. *See Barnes*, 896 F.2d at 1469; *Brune v. BASF Corp.*, No. 99–3194, 2000 WL 1597908, at *3 (6th Cir. Oct.17, 2000); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 624-26 (6th Cir. 2009). If the employer meets this burden of production, the burden shifts to the plaintiff to demonstrate that the employer's stated reason is pretextual. *White*, 429 F.3d at 245. To do so, the plaintiff must show, by a preponderance of the evidence, one of the following: (1) that the proffered reasons had no basis in fact; (2) that the reasons did not actually motivate the employer's actions; or (3) that the reasons were insufficient to motivate the employer's actions. *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994); *White,* 429 F.3d at 245. "[Claiming] by a blanket denial that the employer's articulated reasons for [taking the adverse action] . . . were incorrect . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987).

As a general matter, it is inappropriate for a court to second-guess an employer's legitimate business practices. *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986) ("The factfinder may not focus on the soundness of the employer's business judgment."); *Smith v. Leggette Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (finding that "it is inappropriate for the judiciary to substitute its judgment for that of management"); *Adams v. Tenn. Dep't of Fin. &*

7

*Admin.,* 179 F. App'x 266, 272 (6th Cir. 2006) ("Courts are not intended to act as super personnel departments to second guess an employer's facially legitimate business decisions.").

### B. Slapak's Gender Discrimination Claim

Slapak alleges that she was terminated because of a targeted effort by TMG's owners to eliminate female employees. As an initial matter, the court finds that Slapak was terminated as part of a RIF. Accordingly, to set forth a *prima facie* case of gender discrimination, Slapak must establish that she was either replaced by someone outside of her protected class or that she was treated differently than similarly situated employees. Additionally, Slapak must produce some evidence demonstrating that her status in a protected class was a factor in her termination.

Slapak fails to meet her burden. First, it is undisputed that Anowar—a TMG owner who had shared marketing responsibilities with the plaintiff—simply absorbed Slapak's duties upon her termination and did not replace her.[2] The parties agree that the same arrangement occurred in the operations division of TMG: Campbell, an owner, assumed responsibilities for Freddie Brown, TMG's district manager who was also terminated. Accordingly, Slapak was not "replaced," and the court finds that TMG's layoff of its mid-level managers constituted a RIF. *See Barnes*, 896 F.2d at 1465.

---

[2] The court notes that the plaintiff is inconsistent in her categorization of Anowar's assumption of the plaintiff's job opportunities. At one point in her response to the defendant's statement of material facts, the plaintiff submits that Anowar "replaced" Slapak and "*did not absorb* Plaintiff's duties." (Docket No. 30 ¶ 38 (emphasis added).) In the next paragraph, the plaintiff submits that it is *undisputed* that Anowar "*absorbed* the plaintiff's job duties." (Docket No. 30 ¶ 39 (emphases added).) This second position is reinforced by the plaintiff in her deposition, where she testified that Anowar's job duties began overlapping with the plaintiff's duties prior to her termination. From this evidence, the court finds that Mr. Anowar did not replace the plaintiff as TMG's marketing director.

In support of her *prima facie* case, Slapak asserts that TMG engaged in "global" gender discrimination. Slapak presents no direct evidence for this claim but merely submits allegations as to her perception that TMG's owners did not like women and treated female employees differently than male employees.[3] For instance, Slapak submits that she believed that TMG's co-owner, Campbell, "seemed unhappy to get a bunch of girls working for him." (Docket No. 29 ¶ 56.) Additionally, Slapak submits her disagreement with business decisions made by TMG in the face of its financial difficulties. Slapak also claims that testimony from TMG's human resources director that he had admonished Slapak and other ExxonMobil employees for gossiping and meddling in human resources issues is indicative of a policy of "overt" gender discrimination among the partners and TMG management. (Docket No. 29 ¶ 61-62.) These allegations fail to provide even circumstantial evidence of gender discrimination and, therefore, Slapak has failed to set forth a *prima facie* case for gender discrimination under Title VII.

Moreover, even assuming *arguendo* that Slapak has met her *prima facie* burden, her gender discrimination claim must fail. TMG asserts that Slapak was terminated because of a RIF, satisfying its burden to provide a legitimate business reason for Slapak's termination. In an attempt to demonstrate pretext, Slapak points to her self-serving deposition testimony as to her belief that TMG's owners discriminated against her. It is well-settled that Slapak's conclusory

---

[3] Despite asserting that she was treated differently than similarly situated male employees, Slapak fails to identify a comparator for purposes of the court's analysis and, instead, appears to simply argue that she was treated differently than all male employees. (Docket No. 28 at 28.) It is settled that a plaintiff must prove that all relevant aspects of her employment situation were "nearly identical" to a comparator's in order to demonstrate that she was treated less favorably than similarly situated non-protected employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). Slapak has failed to do so and, accordingly, she has failed to set forth a *prima facie* case on these grounds.

testimony alone is insufficient to meet her burden as to pretext. *See Adams*, 179 Fed. App'x at 274 (upholding district court grant of summary judgment where, by reference only to the plaintiff's self-serving deposition testimony and affidavits, the plaintiff "baldly assert[ed]" that the employer's proffered reasons for termination were pretextual); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (stating that "mere personal beliefs, conjecture and speculation are insufficient" to support an inference of pretext).

Even viewing the evidence in a light most favorable to the plaintiff, Slapak has failed to present evidence that creates a genuine issue of material fact such that a reasonable fact-finder could find in her favor with respect to her *prima facie* case and the issue of pretext. Accordingly, even assuming that Slapak satisfied her *prima facie* burden, summary judgment for MTH is appropriate.

## **CONCLUSION**

For the reasons stated herein, TMG's motion for summary judgment will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge